No. 31,632

THE STATE OF KANSAS, *Appellee*, v. FRANCIS FLINT, *Appellant*.

(33 P. 2d 159.)

Opinion filed June 9, 1934.

*William J. Scott, Thornton D. Scott,* both of Abilene, and *Ralph Noah,* of Beloit, for the appellant.

*Roland Boynton,* attorney-general, and *E. C. Crawford,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of rape, and appeals. The only error assigned meriting discussion is misconduct of the jury.

Defendant was born with a defective forearm and hand, and wore an artificial hand. The crime was committed in an automobile, and complainant told how defendant used the arm and hand. Defendant, after throwing himself upon complainant, tried to pull up her clothing with the hand. Then he got the arm and hand around her, and would try to pull her to the edge of the seat. She would slip back, and finally he took both hands and pulled her to the edge of the

seat. With his legs between hers, he held her out there, her head over the car seat, her neck and shoulders against the seat, and his head under her chin. After she became exhausted, struggling against his weight and strength, he used the good hand to aid accomplishment of his purpose.

The arm and hand were exhibited to the jury. Defendant's counsel asked him about use of the hand only. Defendant said he could not use the fingers, could barely raise and lower the hand, could not hold anything with it, it had no power, and it was for looks only.

Defendant had attended the Chapman high school, had played football, and was a member of the regular football team part of the time. Defendant worked in the Chapman grocery. Most of the time he had a butcher shop in there, and he took meat off plates and sold it to customers "just like any other clerk, I suppose." He had done this for more than eight years before the trial.

Defendant drove an automobile. He drove an automobile down town the night the offense was committed, parked it, and subsequently took a young lady home. Then he drove back down town. Complainant and some other young women were near the place where the car was parked, and complainant accepted his offer to take her home. He drove south across the railroad tracks, did not turn at the proper place to take her home, and drove on south across the bridge over the river. On the far side of the river the main road turns east. Defendant took a byway leading westward. The road led to some fields and to the river, where there were some sandbars and a garbage dump. The road had no outlet, and defendant drove back the way he drove in. The road was somewhat slippery. While in the secluded place the car was twice stopped and started. Returning to Chapman, defendant took complainant to a place near her home, and stopped. Then they drove about for a time. Finally he took her home, and stopped the car, and she got out. He then started the car and drove away.

While the jury was considering the case, one of the jurors said defendant could drive a car as well as the juror, and the juror noticed that up at the post office, when defendant had to shift gears, he raised the defective arm toward the steering wheel.

As indicated, defendant did considerable driving the night the offense was committed. The car was a 1928 Model A, which has standard gear shift. The evidence demonstrated defendant's capability to operate the car, there was no dispute about it, and the

juror's statements added nothing to the testimony of the slightest consequence.

The juror who commented on defendant's ability as an automobile driver said he had purchased meat of defendant, and saw defendant use the arm to steady the package while wrapping and tying it. There was no testimony defendant was mentally defective, which must have been the case if, in the course of eight years, operating a grocery store butcher shop and selling goods as any other clerk, it did not occur to him to use the hand in the manner described by the juror.

In the course of the jury's deliberation there was discussion with reference to defendant's ability to use his arm and hand, and the way he wore the artificial hand when he exhibited the arm and hand to the jury. The jury asked for the hand, and it was sent to the jury room. It was inspected, and the jury, or some of the jurors, concluded defendant did not properly adjust the hand when he exhibited it to the jury. The inference was a legitimate inference from the inspection and defendant's exhibition before the jury.

Complainant had testified defendant put the defective arm and hand behind her and held her, and pulled her toward the edge of the seat. A juror put on the hand, put it around another juror, and pushed up against the other juror, which shed no light on the struggle between defendant and complainant in the automobile seat.

While the jury was deliberating, one of them asked about the girl's reputation. George Seaman had known the girl and her folks for a long time. He said the girl had a good reputation, something which the law took for granted, and which the jury was bound to assume. Seaman also said her folks had a good reputation, something altogether too remote to be a factor in decision of the case.

When examined with respect to his qualification to sit as a juror, Seaman, in response to specific inquiries, said he knew defendant, had traded with him, and knew the girl's father. Except for the usual formal inquiries, the examination was not pressed further, and Seaman was accepted as a juror by both sides. While the jury was deliberating, Seaman said in presence of some of the jurors the girl had a nervous breakdown, and Seaman testified that was all he said with reference to the girl's health.

Defendant testified that, after reaching the secluded place by the river, he put his arm around complainant, and solicited sexual intercourse. Being repulsed, he apologized, and thereafter behaved.

Complainant described two attempts at rape. While the first was in progress, complainant succeeded in opening the car door, and got out of the car. Defendant chased and caught her, got her down on the wet ground, and she collapsed. Realizing what had occurred, defendant desisted, helped her into the car, and told her if she would hush her crying he would take her home. While pretending to get into a road which would permit him to turn, he stopped the car, and told her if she did not give up he would get rough. After a prolonged struggle he accomplished his purpose. As a matter of fact, defendant did not deny intercourse. All he denied was rape.

The jury's choice lay between complainant's account and defendant's bland account of what occurred. Defendant was arrested, and his preliminary examination was held the next day after the offense was committed. At the preliminary examination complainant gave in detail the occurrences of the night before, some of which have been merely sketched. She was corroborated by exhibition of clothing which became muddy during the first assault, and by exhibition of other clothing which was torn and which became bloody during the second assault. The court has read the transcript, and complainant's testimony bears every appearance of verisimilitude. It did not take Seaman's remark about nervous breakdown to establish rape. Nothing else which occurred in the jury room amounted to substantial misconduct, and the court is of the opinion R. S. 62-1718 was designed to cover just such assignments of error as those upon which this appeal is prosecuted.

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (R. S. 62-1718.)

The judgment of the district court is affirmed.